UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Raul Arellano, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>Dr. Dean, et al.,<br><br>Defendants. | Case No.: 15-cv-02247-JLS-JLB<br><br>**REPORT AND RECOMMENDATION**<br><br>**[ECF Nos. 23, 32]** |

## I. INTRODUCTION

Plaintiff Raul Arellano, Jr., a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Second Amended Complaint ("SAC") on October 31, 2016, alleging civil rights violations pursuant to 42 U.S.C. § 1983 against defendants Dr. Dean, Pasha, Roberts, Glynn, and Lewis. (ECF No. 11.) Presently before the Court are two motions seeking to dismiss the claims asserted in Plaintiff's SAC. (ECF Nos. 23, 32). The Court submits this Report and Recommendation to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1 of the Local Rules of Practice for the United States District Court for the Southern District of California. After a thorough review of Plaintiff's SAC, the parties' motion papers, and all supporting documents, and for the reasons discussed below, the Court **RECOMMENDS** that the motion to dismiss filed by defendants Pasha, Roberts, Glynn, and Lewis (ECF No. 23) be **GRANTED** and the motion to dismiss defendant Dr. Dean (ECF No. 32) be **GRANTED IN PART AND DENIED IN PART**.

## II. FACTUAL BACKGROUND[1]

Plaintiff is a state prisoner currently confined at the Richard J. Donovan Correctional Facility ("RJDCF") in San Diego. (ECF No. 11 at 1.)[2]

**A.  Plaintiff's Medical History**

Plaintiff suffers from seizures. (ECF No. 11 at 5.) Plaintiff also suffers from severe head and lower back pain due to two separate incidents. (*Id*.) The first incident involved head trauma that occurred in 2010. (*Id*.) The second incident involved Plaintiff falling from a top bunk in 2012. (*Id*. at 5-6.)

In 2011, Plaintiff was a state prisoner confined at Calipatria State Prison ("Calipatria"). Doctors at Calipatria prescribed Plaintiff the medication Neurotin to control his seizures and nerve pain. (*Id*. at 5, 17-19.) Plaintiff received Neurotin until his transfer to RJDCF in 2012. (*Id*. at 5.) The doctors at RJDCF prescribed Plaintiff Keppra for his seizures and Amtriptoline for his pain. (*Id*.)

On May 20, 2014, Plaintiff was seen by defendant Dr. Dean at RJDCF. (*Id*.) At that time, Plaintiff told defendant Dr. Dean that his prison medical history shows that doctors at Calipatria determined that Neurotin was the best medication to control his seizures and pain and that he stopped receiving Neurotin when he arrived at RJDCF. (*Id*.) Plaintiff's medical history at that time also contained outcome data showing that Neurotin was the most effective medication for Plaintiff's seizures and pain, without severe side effects. (*Id*. at 7.)

Also during Plaintiff's May 20, 2014 visit with Dr. Dean, Plaintiff told Dr. Dean that the seizure and pain medications he received at RJDCF (Keppra and Amtriptoline) were both ineffective and threatening to his life and health. (*Id*. at 5-6.)

/ / /

---

[1] The Court accepts Plaintiff's factual allegations as true for purposes of assessing Defendants' motions to dismiss only.

[2] All page number citations in this Report and Recommendation refer to the page numbers generated by the CM/ECF system.

Plaintiff also told defendant Dr. Dean that he was experiencing the following side effects from Keppra and Amtriptoline:

> (1) can't sleep due to pain; (2) can't sleep due to panic attacks; (3) pain severe that interferes with breathing; (4) pain severe that has been giving me suicidal thoughts, as I attempted suicide;[3] (5) seizures are aggressive, uncontrol[led], due to Keppra medication, putting health & life at risk; (6) life & health at risk because side effects causes nausea that makes me vomit, and it causes dizziness that causes me to fall.

(ECF No. 11 at 5.) When Plaintiff told defendant Dr. Dean that he was experiencing severe suicidal thoughts every time he took his medication, she allegedly responded with a "laugh" and the following statement: "'Don't tell no one that, just do it.'" (*Id*. at 8.)

In addition, Plaintiff told defendant Dr. Dean that he has a neuropathy diagnosis. (*Id.* at 6.) Plaintiff also stated that because his medications are ineffective, he experiences neuropathy, including pain that prevents him from sitting to use the bathroom and exercising. (*Id*.) Further, he told defendant Dr. Dean that a high percentage of his pain is reduced when wearing orthopedic shoes borrowed from other inmates. (*Id*.) Defendant declares that "every inmate here in the institution who suffers from neuropathy symptoms the institution prescribes them shoes." (*Id*. at 10.)

Defendant Dr. Dean did not prescribe orthopedic shoes[4] or medication to address Plaintiff's May 20, 2014 complaints, nor did she discontinue Plaintiff's prescriptions for Keppra and Amtriptoline. (*Id*. at 6.)

On June 10, 2014, Plaintiff was seen by defendant Pasha, a nurse at RJDCF ("Nurse Pasha"). (*Id*. at 8.) Plaintiff shared the same information with Nurse Pasha that he

---

[3] Plaintiff appears to plead that his attempted suicide was subsequent to his May 20, 2014 visit with defendant Dr. K Dean. (*See* ECF No. 11 at 7 ("I have documentation that in March 2015 Keppra & Amptriptoline was taken off because I end up in suicidal infirmary due to side effects of this pills, and due to severe pain").)

[4] With respect to Plaintiff's request for orthopedic shoes, defendant Dr. Dean allegedly told Plaintiff that "she wasn't ordering them because they cost money to the institution." (*Id*. at 10.)

previously shared with Dr. Dean on May 20, 2014 concerning his medications and medical history. (*Id.*) Plaintiff alleges that Nurse Pasha "acknowledges" that Plaintiff lives every day without being able to sleep, eat, walk, and exercise. (*Id.*) Deferring to defendant Dr. Dean, defendant Nurse Pasha did not prescribe any medication to address Plaintiff's complaints, nor did she discontinue Plaintiff's prescriptions for Keppra and Amtriptoline. (*Id.*)

At some point between June 10, 2014 and March 2015, Plaintiff attempted suicide. (*Id.* at 7.) In March 2015, doctor(s) at RJDCF took Plaintiff off Keppra and Amtriptoline. (*Id.*) In October 2015, doctor(s) at RJDCF prescribed Plaintiff with Lyrica for pain. (*Id.*) And by December 2015, doctor(s) at RJDCF prescribed Plaintiff with Neurotin for seizures and pain. (*Id.*)

### B. Plaintiff's Administrative Grievances

On May 15, 2014 and June 30, 2014, Plaintiff filed grievances with defendants Glynn, Roberts, and Lewis regarding Plaintiff's medical care at RJDCF. (*Id.* at 9.) Plaintiff's grievances allegedly addressed the same health issues previously presented to defendants Dr. Dean and Nurse Pasha concerning Plaintiff's course of treatment. (*Id.*) Defendants Glynn and Roberts responded on June 18, 2014, and defendant Lewis responded on September 17, 2015. (*Id.*) Plaintiff alleges these defendants did not send him to medical for assessment, nor did they have Plaintiff re-evaluated by a new doctor or specialist. (*Id.* at 9-11.) Plaintiff's grievances and these defendants' responses thereto are not part of the record.

### III. PROCEDURAL BACKGROUND

Plaintiff initiated the present suit by filing a complaint in this district court on October 6, 2015. (ECF No. 1.) Plaintiff filed his SAC on October 31, 2016, alleging civil rights violations pursuant to 42 U.S.C. § 1983 against the following defendants: (1) Dr. Dean; (2) Nurse Pasha; (3) Roberts; (4) Glynn; and (5) Lewis. (ECF No. 11.) Plaintiff alleges that all defendants violated his Eighth Amendment right to freedom from cruel and unusual punishment and Fourteenth Amendment right to equal protection. (*Id.*)

Defendants filed two motions to dismiss the claims asserted in Plaintiff's SAC, which are presently before the Court. (ECF Nos. 23, 32).

## IV. DISCUSSION

**A.     Legal Standards**

    1.    <u>Motion to Dismiss for Failure to State a Claim</u>

The Federal Rules of Civil Procedure require that a plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard Rule 8 announces does not require detailed factual allegations, and the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Twombly*, 550 U.S. at 555).

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008). The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In ruling on a Rule 12(b)(6) motion to dismiss, the court does not look at whether the plaintiff will "ultimately prevail but whether the [plaintiff] is entitled to offer evidence

to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court may consider allegations contained in the pleadings, exhibits attached to the complaint, and documents and matters properly subject to judicial notice. *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007). The court must assume the truth of the facts presented and construe all inferences from them in the light most favorable to the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). However, the court is "not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

        2.      Standards Applicable to *Pro Se* Litigants

With respect to an inmate who proceeds *pro se*, his factual allegations, "however inartfully pleaded," "must be held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Erickson*, 551 U.S. at 94 (reaffirming that this standard applies to *pro se* pleadings post-*Twombly*). Thus, where a plaintiff appears *pro se* in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, in giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones v. Cmty. Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984).

Before dismissing a *pro se* civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure. *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend. *Id.*; *see also James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

**B. Analysis**

    1. <u>Cruel and Unusual Punishment</u>

Plaintiff claims that Defendants acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment right to freedom from cruel and unusual punishment. Defendants argue Plaintiff's Eighth Amendment claims should be dismissed because Plaintiff merely alleges a difference of medical opinion about the appropriate course of treatment for Plaintiff, which cannot amount to an Eighth Amendment violation. (ECF No. 23-1; ECF No. 32-1.)

    *i. Applicable Law*

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to an inmate's serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 302 (1991); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to an inmate's serious medical needs may be manifested in two ways: the intentional denial, delay, or interference with a plaintiff's medical care, or by the manner in which the medical care was provided. *See Estelle*, 429 U.S. at 104-05. In either case, the indifference to the inmate's medical needs must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2002).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. The "existence of any injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)
/ / /

(en banc); *accord Lopez v. Smith*, 203 F.3d 1122, 1131-32 (9th Cir. 2000); *Doty v. Cty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994).

Defendants do not dispute that Plaintiff adequately alleges a serious medical need in his SAC. Instead, Defendants base their motions to dismiss on the Eighth Amendment's deliberate indifference prong. (*See* ECF No. 23-1 at 6-7; ECF No. 32-1 at 5-7.) Thus, for purposes of assessing Defendants' motions, the Court assumes that Plaintiff's medical needs are serious.

In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind. *See Wilson*, 501 U.S. at 300-02. "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The court must focus on "what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." *Farmer*, 511 U.S. at 838-39. "Even if a prison official *should* have been aware of the risk, if he 'was not, then he has not violated the Eighth Amendment, no matter how severe the risk.'" *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 946 (2015) (quoting *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

The subjective standard for deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "[A]n *inadvertent* failure to provide adequate medical care by itself [does not] create a cause of action under § 1983. A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060.

Differences in judgment between a prisoner and a prison official regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Estelle*, 429 U.S. at 107-08; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). In addition, a prison official's reliance on the medical opinions of other

qualified staff, when the official serves in an administrative role and has no expertise to contribute his own medical opinion, is not deliberate indifference. *See Peralta*, 744 F.3d at 1087.

### ii. *Defendants Dr. Dean and Nurse Pasha*

Plaintiff claims that defendants Dr. Dean and Nurse Pasha were deliberately indifferent when ignoring his complaints about the ineffective nature of, and severe side effects from, prescribed pain and seizure medication. Plaintiff alleges that Dr. Dean examined him on May 20, 2014 and Nurse Pasha examined him on June 10, 2014, at which times Plaintiff complained of and described severe pain and serious side effects that he attributed to his current medication, and also stated his current medication was not effective at controlling his pain. Despite these serious complaints, defendants Dr. Dean and Nurse Pasha did nothing. (ECF No. 11.) Defendants argue Plaintiff fails to state a claim because he alleges nothing more than a "difference of medical opinion" and fails to show that the medication he was on at the time was medically unacceptable. (ECF No. 23-1, at 7; ECF No. 32-1 at 6.) The Court agrees, in part, with Defendants' characterization of the SAC.

While Plaintiff alleges a disagreement with his course of treatment, he also alleges that defendants Dr. Dean and Nurse Pasha purposefully ignored his complaints of significant side effects, including suicidal thoughts, from his medication and severe pain unabated by his medication. With respect to Dr. Dean, Plaintiff alleges facts that—if credited, as they must be here—show Dr. Dean purposefully failed to treat Plaintiff's serious medical needs. Specifically, Plaintiff alleges that she laughed when he complained that his medication caused him to have suicidal thoughts and said, "'Don't tell no one that, just do it.'"[5] At this procedural posture, Plaintiff's factual allegations against Dr. Dean

---

[5] Defendants do not address these specific allegations in their briefing. Rather, they argue the fact that multiple medical professionals evaluating Plaintiff determined that Keppra and Amitriptyline were appropriate medications supports the conclusion that defendants Dr. Dean and Nurse Pasha were not deliberately indifferent to Plaintiff's medical needs. (*See* ECF No. 23-1 at 7.) But that argument is not properly before the Court on a motion to dismiss.

satisfy the objective and subjective prongs of the Court's Eighth Amendment inquiry. Thus, the Court concludes Plaintiff sufficiently pleads a plausible claim for deliberate indifference to serious medical needs against Dr. Dean.[6]

However, with respect to Nurse Pasha, Plaintiff fails to sufficiently plead a claim for deliberate indifference. Again, "deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Farmer*, 511 U.S. at 837. Plaintiff alleges Nurse Pasha "acknowledge[d]" that she was leaving Plaintiff unable to sleep, eat, walk, and exercise, and did nothing about it "because is not her on my shoes and she don't care." (ECF No. 11 at 8.) This vague and conclusory allegation does not support a plausible inference of deliberate indifference as to Nurse Pasha. Plaintiff's allegations against Nurse Pasha do not satisfy the subjective prong of the Court's Eighth Amendment inquiry.

Thus, the Court concludes that Plaintiff's SAC pleads a plausible deliberate indifference claim against Dr. Dean, but not against defendant Nurse Pasha. Accordingly, the Court recommends that, with respect to these claims, Nurse Pasha's motion to dismiss (ECF No. 23) be granted and Dr. Dean's motion to dismiss (ECF No. 32) be denied.

### iii. Defendants Roberts, Glynn, and Lewis

Plaintiff's claims against defendants Roberts, Glynn, and Lewis all arise solely from their participation in the administrative grievance process. Plaintiff alleges in the SAC that the response of defendants Roberts and Glynn to Plaintiff's May 15, 2014 grievance and

---

[6] *See also Willis v. Kandkhorova*, No. 15cv1572, 2017 WL 6209383, at *3 (E.D. Cal. Dec. 8, 2017) ("An allegation that prison officials deliberately ignored a prisoner's complaint about the ineffective nature of prescribed pain medication and the pain being suffered as a result can, in some circumstances, give rise to a constitutional claim."); *Ahdom v. Lopez*, No. 09cv1874, 2015 WL 5922020, at *5 (E.D. Cal. Oct. 9, 2015) (denying motion to dismiss where plaintiff claimed "that his complaints of severe pain and attempts to relay possible causes, as well as problems with side-effects from his medications, were ignored and untreated").

the response of defendant Lewis to Plaintiff's June 30, 2014 grievance violated his Eighth Amendment right to be free from cruel and unusual punishment.[7] (*See* ECF No. 11.) In support of these claims, Plaintiff alleges that despite being made aware of Plaintiff's health issues, these defendants failed to "send me to get re-evaluated to a new doctor, or specialist (neurologist)." (*Id*. at 9-10.)

However, Plaintiff fails to plead factual content that allows this Court to draw the reasonable inference that defendants Roberts, Glynn, and Lewis were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff does not plead that that these defendants denied him medical care. Rather, Plaintiff pleads that he received medical attention from Nurse Pasha on June 10, 2014. (*Id*. at 8.) This visit by Nurse Pasha occurred in the interim period between Plaintiff's May 15, 2014 grievance and defendants Roberts and Glynn's June 18, 2014 response thereto. (*Id*. at 9.) Thus, Plaintiff's claim against these defendants seems to be that they did not order the specific medical treatment that Plaintiff wanted – "to get re-evaluated to a new doctor, or specialist (neurologist)." (*Id*. at 9-10.)

Further, Plaintiff does not allege that defendants Roberts, Glynn, and Lewis were personally involved in any decisions about the appropriate course of Plaintiff's treatment. In addition, Plaintiff fails to plead any facts that suggest these defendants performed any action, such as reviewing his medical records, that might have caused them to become aware of the existence of an excessive risk to Plaintiff's health. Plaintiff also does not plead that these defendants had their own medical expertise to independently assess Plaintiff's medical needs.

To the extent Plaintiff contends these defendants should have ordered different medical treatment instead of relying on the medical judgment of the professionals treating Plaintiff, such allegations fail to state a plausible deliberate indifference claim. Defendants

---

[7] Plaintiff's grievances and Defendant's responses thereto are not part of the record.

Roberts, Glynn, and Lewis are sued in their capacity as administrators involved in the administrative grievance process, not as medical providers. It is not deliberate indifference for prison officials serving in administrative roles to rely on the opinions of qualified medical staff in responding to a plaintiff's medical care grievance. *See Peralta*, 744 F.3d at 1087; *see also Doyle v. Cal. Dep't of Corr. and Rehab.*, No. 12cv2769, 2015 WL 5590728, at *9 (N.D. Cal. Sept. 23, 2015) ("It simply cannot be said that, by signing off on the denials at the second . . . level[], defendants . . . disregarded a substantial risk of harm to [plaintiff]'s health by failing to take reasonable steps to abate it."). Plaintiff has not made the threshold showing in his SAC that defendants Roberts, Glynn, and Lewis not only knew of an excessive risk of harm to Plaintiff's health but also *purposefully* disregarded it. *See Farmer*, 511 U.S. 842.

Accordingly, the Court finds that Plaintiff's SAC fails to plead plausible deliberate indifference claims against defendants Roberts, Glynn, and Lewis and recommends that, with respect to these claims, Defendants' Motion to Dismiss (ECF No. 23) be granted.

2. <u>Equal Protection</u>

Plaintiff alleges in the SAC that defendants Roberts, Glynn, and Lewis's responses to Plaintiff's grievances violated his constitutional right to equal protection. (ECF No. 11 at 8-9.) Plaintiff also alleges in the SAC that defendants Dr. Dean and Nurse Pasha violated his constitutional right to equal protection by failing to provide him with orthopedic shoes and "for not stopping a medication that was putting my life & health at risk." (*Id.* at 10-11.) Defendants argue these claims should be dismissed because Plaintiff fails to allege sufficient facts to state equal protection claims against Defendants. (ECF No. 23-1 at 8-10.) The Court agrees.

    *i.*    *Applicable Law*

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated a like." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*,

457 U.S. 202, 216 (1982)). A plaintiff may state a claim under § 1983 for a violation of the Equal Protection Clause in two ways. First, a plaintiff may show that a defendant acted with an intent or purpose to discriminate against the plaintiff based upon his membership in a protected class, such as race. *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998). Second, if the action in question does not involve a plaintiff's membership in a suspect class, a plaintiff may establish an equal protection claim under the "class of one" theory by showing he was intentionally treated differently from other similarly situated individuals without a rational basis for the difference in treatment. *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 601 (2008); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Action Apt. Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007). "A class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed to being an accident or a random act.'" *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)). A class of one claim is premised on the theory that "defendants . . . harbor animus against [plaintiff] in particular and therefore treated [him] arbitrarily." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

### ii. Claims Against Defendants

Upon a thorough review of Plaintiff's SAC, the Court finds Plaintiff fails to plead any facts that support a plausible equal protection claim against Defendants under either of the two available theories. First, Plaintiff does not allege Defendants intentionally discriminated against him based on his membership in a protected class, such as a certain race, national origin, or religion. Second, Plaintiff fails to allege facts showing Defendants "harbored animus" against him individually and intentionally treated Plaintiff differently from other similarly situated individuals without any rational basis for the different treatment.

///

Plaintiff alleges facts that suggest Plaintiff was treated differently from other similarly situated prisoners, but only in the context of declining to prescribe him orthopedic shoes to treat his neuropathy. He alleges, "myself declaring that every inmate here in the institution who suffers of neuropathy symptoms the institution prescribes them shoes." (ECF No. 11 at 10). However, as to the decision not to issue Plaintiff orthopedic shoes, the SAC is devoid of any facts that suggest that Defendants harbored any hostility toward Plaintiff individually and that as a result of such hostility, Defendants intentionally treated Plaintiff differently from other similarly situated individuals.[8]

Accordingly, the Court concludes that Plaintiff fails to plead a plausible equal protection claim against Defendants, and thus these claims should be dismissed.

## V. CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) accepting this Report and Recommendation; (2) **GRANTING** the motion to dismiss filed by defendants Pasha, Roberts, Glynn, and Lewis (ECF No. 23); (3) **GRANTING IN PART AND DENYING IN PART** the motion to dismiss filed by defendant Dr. Dean (ECF No. 32) to the extent that (a) Plaintiff's

/ / /

---

[8] In addition, for the reasons argued by Defendants, even if Plaintiff had alleged facts to support that Defendants harbored personal animosity towards him, Plaintiff's equal protection claim would still fail. (ECF No. 23-1 at 9.) Specifically, a class-of-one theory of liability is generally not appropriate where the challenged decision-making is necessarily based on a vast array of subjective, individualized assessments, such as in the provision of specific medical care. *See Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (the "class-of-one doctrine" does not apply to "forms of state action that involve discretionary decisionmaking"); *Lewis v. Marciano*, No. 17cv170181, 2017 WL 4156984, at *5 (C.D. Cal. Sept. 18, 2017) ("A "class-of-one" equal protection claim must generally show that the difference in treatment resulted from non-discretionary state action.") (citing *Engquist*, 553 U.S. 591). Although Plaintiff declares that "every" inmate who suffers from neuropathy is prescribed orthopedic shoes, Plaintiff asserts no basis for making such a claim. In fact, it is difficult to imagine that Plaintiff could be in a position to know the diagnoses of every inmate at RJDCF. Thus, the Court finds this allegation to be implausibly pled. The Court does not accept as true this conclusion couched as a factual allegation. *See Iqbal*, 556 U.S. at 678-79 ("Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

1 | Fourteenth Amendment claim in the SAC against defendant Dr. Dean is dismissed in its
2 | entirety, and (b) Plaintiff's Eighth Amendment claim against defendant Dr. Dean remains.

**IT IS ORDERED** that no later than **February 6, 2018**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 16, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: January 17, 2018

_____
Hon. Jill L. Burkhardt
United States Magistrate Judge